HECKMAN v. THE BARGE RICHARD III et al.

(First Division.  Juneau.  November 27, 1907.)

No. 62.

1. TOWAGE (§ 11*)—ADMIRALTY—DAMAGE.

    A towing tug is neither a common carrier nor an insurer, and all that is required is that those in charge of her shall exercise reasonable care and skill in everything that is done; that is, the care and skill that a prudent navigator would employ in a similar service.  The direct and immediate cause of the injury to the tow must have been the failure of the tug to exercise reasonable skill and care, and where that is exercised no recovery can be had.

    [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

C. E. Ingersoll, for libelant.

Malony & Cobb, for respondent and claimant.

GUNNISON, District Judge.  This is a suit in admiralty, by which libelant seeks to recover upon a contract for towing the barge Richard III from Hadley to Niblack.  The Pacific Freighting Company, of Victoria, B. C., intervened, filed a cross-libel by the way of answer, in which it set up its owner-ship of the barge, alleged the failure on the part of the libel-ant to carry out the towage contract, and set up certain dam-ages to the tow, which it alleged to have resulted from the negligence of the libelant's employés.  It also claimed certain damages for delay caused by these injuries.  From the evidence, it appears that the barge Richard III is a dismantled bark, without independent motive power or means of propulsion, and that she is used as a carrier between the ports of British Columbia, Puget Sound, and southeastern Alaska.  On the 4th of February, 1906, she lay at Hadley, intending to pro-

*See same topic & § NUMBER in Dec. & Am. Digs: Key No. Series & Rep'r Indexes

ceed to Niblack to load with concentrates. At that time there were no tugs at Hadley, and, the desire that she proceed at once to Niblack being great, Mr. Needing, the superintendent of the Niblack mines, acting as representative of her master, entered into negotiations with the libelant which ended in the towage contract from which this suit developed.

. · The contract was verbal, and was arranged wholly by Mr. Needing for the master of the barge. It appears from the evidence that the libelant, who held the steamboats Arctic and Carita under charter, agreed for the sum of $250 to tow the barge Richard III from Hadley to Niblack and to assume the risk of loss or damage resulting from ordinary causes. The claimant contends that the contract required the tow to be taken from dock to dock; but I think that the evidence does not support that contention. The desire to have the barge at Niblack was so great upon the part of the Niblack Copper Company that Needing agreed to pay $110 of the $250, the price agreed upon, for the reason that the master of the barge Richard III, before any negotiations for a tow were begun, refused to pay more than $140 to be taken to Niblack. The sum of $110 has been paid. The sum of $140, the amount in controversy, the claimant has not paid.

. The two steamers Arctic and Carita, with the barge Richard III in tow, left Hadley at about noon of the 14th of February, and reached the entrance to the harbor of Niblack about 6 :45 p. m. on the same day. The entrance is admittedly a narrow strip of water, not exceeding 300 feet in width at its narrowest point. The claimant charges that in entering this harbor at full speed—that is, at the rate of five miles an hour, which the master of the barge testifies is the maximum speed at which he could be towed—the tugs were guilty of negligence. Claimant contends that they should have slowed down before entering the place. It was a clear, though dark, winter night. The captain of the Arctic, who was in command of the tugs

and tow, was on the lookout, and, turning into the harbor, came suddenly and unexpectedly upon a field of ice ranging from one to three inches in thickness. Before the tugs could be stopped, both rammed into the ice, and in order to avoid a collision with the tugs the helm of the tow was put to port. The barge thus avoided a collision with the tugs; but her momentum was so great that she, too, rammed into the ice for some distance. A colloquy ensued between the master of the Arctic and the master of the barge, in which the latter told the former that the sheathing on the barge was in good shape, and that the barge could be driven in as far as the tug Arctic could stand to go. The tugs then attempted to take the Richard III through the ice. The Carita, being sheathed with iron, commenced to break a channel through the ice; the Arctic attempting to follow with the barge through the channel thus broken. After proceeding a little way, it appeared that the sheathing of the Arctic was so badly damaged that it was impossible to proceed further without danger of losing her, and, after advising the master of the barge of his condition and directing the Carita to stay by the barge, the Arctic left. The next morning the Carita continued with its efforts to break a channel, and succeeded in getting the Richard III to an anchorage about 150 yards from the dock, when she, too, becoming so badly damaged that it was impossible to proceed with the work, left the barge; the barge having let go her anchor.

The evidence discloses the fact that no one connected with the contract, neither the tugs nor the tow, had any reason to believe that ice would be encountered in the carrying out of the contract, and it is my opinion that the dangers from the ice were not considered by any of the parties in the negotiations leading up to, or in the making of, the contract. A tug is neither a common carrier nor an insurer, and all that is required is that those in charge of her shall exercise reasonable care

and skill in everything that is done; that is, the care and skill that a prudent navigator would employ in a similar service. 28 Am. & Eng. Ency. of Law (2d Ed.) 262, and cases there cited. From the evidence in the case I am satisfied that the master of the Arctic exercised that reasonable care and skill which was required of him, and that the conditions which he met on entering the harbor were so extraordinary as not to have been expected at that time and place. That due care was exercised by those in charge of the tugs after encountering this unusual hazard is, I think, evident. The fact that the Arctic left the Richard III before reaching the anchorage is not, under the circumstances, to be taken as an abandonment of her, inasmuch as the other tug remained with the tow and succeeded in conveying her to a place of safety; that is, a safe anchorage.

The contract of towage, where a fixed amount for the tow from one place to another is agreed upon, becomes an entire contract; the question being then as to whether or not the contract was completed. I am satisfied that the contract in this case was completed; that, when the tugs placed the barge in safe anchorage in the port of Niblack, they had completed their contract; and that they were not required to dock her. In other words, the libelant not only carried out his contract to tow the barge Richard III from Hadley to Niblack, but, in the face of an unusual and unexpected hazard, exercised due care and skill in bringing the tow to a place of safety. If the barge was injured by the ice when it first came in contact with it, I am of the opinion that the damage cannot be charged to the libelant. On the other hand, if the damage occurred at any time subsequent to that, it is clear from the evidence that the libelant is not responsible for any such damage, inasmuch as the master of the barge told the master of the Arctic that his sheathing was in good condition and that he could stand to be "butted into the ice." The efforts to take the barge

through the ice were made at the suggestion and the request of the master of the barge.   It therefore follows that, these efforts being at the suggestion and request of the master of the barge, claimant cannot recover for damages caused by the ice.   Neither can it recover from libelant damages for delay, the cause of which was beyond the control of the libelant. The direct and immediate cause of the injury to the tow must have been the failure of the tugs to exercise reasonable skill and care, and where that is exercised no recovery can be had. 26 Am. & Eng. Ency. of Law (2d Ed.) 273.

The cross-libel should be dismissed, and the libelant should recover the balance due on the towage contract, with the costs.